United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT JOHN STOCKTON,

          Plaintiff,

    v.

SMITH, et al.,

          Defendants.

Case No. 24-cv-06676-HSG

**ORDER GRANTING LEAVE TO FILE AMENDED COMPLAINT; DISMISSING AMENDED COMPLAINT WITH LEAVE TO AMEND; DENYING REQUEST FOR APPOINTMENT OF COUNSEL**

Re: Dkt. No. 17 at 22; Dkt. No. 18

      Plaintiff, an inmate currently housed at Pelican Bay State Prison ("PBSP"), has filed a *pro se* action pursuant to 42 U.S.C. § 1983. In this order, the Court GRANTS Plaintiff's request for leave to file an amended complaint, Dkt. No. 18 at 1; screens Plaintiff's complaint (Dkt. No. 17) pursuant to 28 U.S.C. § 1915A; and DENIES Plaintiff's requests for appointment of counsel, Dkt. No. 17 at 22, Dkt. No. 18 at 2-3. Plaintiff has been granted leave to proceed *in forma pauperis* in a separate order.

## DISCUSSION

### I.    Request for Leave to File Amended Complaint (Dkt. No. 18 at 1)

      Plaintiff commenced this action on or about September 25, 2024, when he submitted case-initiating documents by postal mail. Dkt. No. 1. On January 16, 2025, Plaintiff submitted the complaint by electronic filing, as required by N.D. Cal. General Order No. 76. Dkt. No. 12. On February 3, 2025, Plaintiff filed both an amended complaint, Dkt. No. 17, and a request for leave to file an amended complaint, Dkt. No. 18 at 1. Plaintiff states that the amended complaint corrects names and dates of incidents, and reports the status of prisoner grievances which are still pending. *See generally* Dkt. No. 18 at 1.

United States District Court
Northern District of California

1    Fed. R. Civ. P. 15(a) provides that a party may amend its pleading once as a matter of

2   course within 21 days after serving it.  Fed. R. Civ. P. 15.  Fed. R. Civ. P. 15(a) is to be applied

3   liberally in favor of amendment.  In general, leave shall be freely given when justice so requires.

4   *See Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994).  The Court has not yet

5   screened the initial complaint, and defendants have not yet been served.  The Court therefore

6   GRANTS Plaintiff's request to file the first amended complaint docketed at Dkt. No. 17.  Dkt. No.

7   18.

8   **II.     Screening Amended Complaint (Dkt. No. 17)**

9         **A.      Legal Standard**

10         A federal court must conduct a preliminary screening in any case in which a prisoner seeks

11   redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C.

12   § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims

13   that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek

14   monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1),

15   (2).  *Pro se* pleadings must, however, be liberally construed.  *See United States v. Qazi*, 975 F.3d

16   989, 993 (9th Cir. 2020).

17         Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

18   claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Specific facts are not

19   necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the

20   grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

21   While Rule 8 does not require detailed factual allegations, it demands more than an unadorned,

22   the-defendant-unlawfully-harmed-me accusation.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

23   A pleading that offers only labels and conclusions, or a formulaic recitation of the elements of a

24   cause of action, or naked assertions devoid of further factual enhancement does not suffice.  *Id.*

25   To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:  (1) that a

26   right secured by the Constitution or laws of the United States was violated, and (2) that the alleged

27   violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487

28   U.S. 42, 48 (1988).

2

United States District Court
Northern District of California

**B.     Amended Complaint**

The amended complaint names as defendants the following PBSP correctional officials: warden Steven Smith, correctional counselor II C. Durham, correctional counselor J. Juneau, lieutenant Harlen, correctional officer C. Bartley, and lieutenant Burge.

The amended complaint sets forth five different set of claims.

The first claim concerns events that took place while Plaintiff was housed in PBSP's Restricted Custody General Population ("RCGP") during May 2024.  In May 2024, Plaintiff was housed in "a compatible group with approximately six (6) hispanic prisoners."  While housed in RCGP, Plaintiff lived in a hyper-vigilant reality, lived under abnormal stress, and was in a perpetual "on guard" for his personal safety.  This is because RCGP is known for housing enemy affiliates on the same tier and in the same grouping, and RCGP is prone to prisoner-on-prisoner violence.  On May 22, 2024, defendants Smith, Durham, and Juneau approved the placement of inmate Winson to be in direct contact with Plaintiff, without first informing or warning Plaintiff.  Inmate Winson is a Security Threat Group (prison gang) affiliate or member, and is a documented enemy of Plaintiff.  Inmate Winson has a history of attempting to murder other "white" inmates with whom he comes into contact.  On May 31, 2024, Plaintiff was rehoused in administrative segregation for allegedly attempting to murder inmate Winson.  Plaintiff alleges that the placement of inmate A onto his yard violated his right to be safe, as guaranteed by the Eighth Amendment and substantive due process.

The second claim concerns interactions with defendant Bartley in June 2024, which allegedly violated the Eighth Amendment and constituted First Amendment retaliation.  On June 2, 2024, while Plaintiff was housed in administrative segregation, defendant Bartley started to harass Plaintiff.  Defendant Bartley demanded Plaintiff submit to an unclothed body search.  Plaintiff refused because he had no property in his cell.  Defendant Bartley threatened to issue a rules violation report for lack of compliance.  Plaintiff filed a grievance regarding this incident.  On June 20, 2024, while defendant Bartley was escorting Plaintiff away from his cell, Plaintiff noticed a "memorandum" taped to his cell front.  The memorandum was an unofficial notice to other staff ordering all RHU staff to "keep electricity off from plaintiff's television appliance."

1    Defendant Bartley informed Plaintiff that the directive was intended as punishment for Plaintiff's

2    actions on June 2, 2024.  Plaintiff reached for the memorandum.  In response, defendant Bartley

3    violently yanked on Plaintiff's wrist restraints, leaving a scar on the top of Plaintiff's wrist.

4    Defendant Bartley then shoved Plaintiff's face into the door of Cell No. 198, and then shoved

5    Plaintiff's face into the pavement.  Plaintiff suffered a concussion and a gaping wound over his

6    left eyebrow that required nine stitches to close.  Plaintiff continues to suffer from night terrors

7    regarding the event, and doctors have recommended therapy.  Defendants Smith and Harlan

8    reviewed the grievance regarding defendant Bartley's behavior but did not protect Plaintiff from

9    defendant Bartley's assault.

10         The third claim concerns Plaintiff's general complaints about the living conditions in

11   administrative segregation.  Defendant Harlen is responsible for RHU's living conditions,

12   including keeping RHY yard cages clean, affording due process to prisoners prior to the

13   imposition of punitive measures, and excessive full body strip outs.  RHU staff refuse to allow

14   Plaintiff to take a cup of water to drink while in RHU yard cages, reasoning that the water can be

15   used to gas a staff member.  The yard cage spigots are rusted and not routinely cleaned.  This

16   means prisoners must choose between going without water or drinking unsanitary water during the

17   3.5 to 5 hours they are at yard.  RHU staff are ordered to "'strip out' Plaintiff to a full nude

18   posture" each time he leaves his cell or the RHU yard. The strip search is unnecessary because

19   Plaintiff does not come into direct contact with other prisoners, is never without restraints when

20   outside his cell, and there is no evidence that "squat and cough" searches yields contraband

21   secreted in an inmate's rectum.  The strip search is intended to degrade Plaintiff.  Defendant

22   Harlan has modified prison tablets as a punitive measure.  Defendant Harlan has deleted

23   news/press apps which Plaintiff has paid for, and deleted ViaPath Corp. phone apps that offer

24   Plaintiff unlimited calls to his family and friends.  These modifications were applied without

25   notice or due process of law, and without justification as Plaintiff has not been found guilty of any

26   act for which the punishment was loss of phone privileges or loss of access to news/press.  These

27   modifications also constitute censorship.  Defendant Smith supervises defendant Harlan and is

28   responsible for defendant Harlan's wrongdoing.

1    The fourth claim concerns defendant Burge's review of Plaintiff's June 24, 2024 grievance

2  grieving defendant Bartley's assault.  Defendant Burge required Plaintiff to sign a *Miranda* waiver

3  before defendant Burge would further investigate the allegations against defendant Bartley.

4  Plaintiff believes that defendant Burge was seeking to silence Plaintiff, in contravention of prison

5  regulations that require staff misconduct allegations to be kept confidential and that victim

6  statements not be used against the victim.  Plaintiff is entitled to whistleblower protections.  All

7  Defendants are collectively responsible for enforcing policies "in suppressive manners."

8  Defendants' actions constituted deliberate indifference to Plaintiff's current mental stability

9  because their actions cause Plaintiff mental stress and are taking an emotional toll on him.

10    The fifth claim is that PBSP staff are retaliating against Plaintiff for his ongoing litigation

11  efforts.  Plaintiff has not left his cell in fifteen days because he fears retaliation.  Plaintiff requests

12  a preliminary injunction re-housing Plaintiff in an alternate prison.

13    The amended complaint alleges generally that the above incidents, actions, and inactions

14  violate the First, Eighth, and Fourteenth Amendments, as well as the equal protection clause.  The

15  amended complaint seeks the following relief: $36,500 in general damages; special damages of

16  $1,000 per stitch; punitive damages; costs of litigation; and any other relief deemed appropriate.

17  The amended complaint also seeks a preliminary injunction re-housing Plaintiff in an alternate

18  prison.

19    **C.    Dismissal with Leave to Amend**

20    The Court DISMISSES the amended complaint with leave to amend because it suffers

21  from numerous deficiencies, some of which the Court lists below.

22    First, the amended complaint violates Fed. R. Civ. P.'s joinder rule.  Fed. R. Civ. P.

23  20(a)(2) provides that all persons "may be joined in one action as defendants if: (A) any right to

24  relief is asserted against them jointly, severally, or in the alternative with respect to or arising out

25  of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question

26  of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  The

27  upshot of these rules is that "multiple claims against a single party are fine, but Claim A against

28  Defendant 1 should not be joined with unrelated Claim B against Defendant 2."  *George v. Smith*,

United States District Court
Northern District of California

1    507 F.3d 605, 607 (7th Cir. 2007). To seek relief for claims arising out of other incidents or

2    raising different questions of law, Plaintiff must bring separate actions. For example, Plaintiff's

3    claim regarding the placement of inmate Winson on his yard in RCGP arises out of a different

4    series of transactions or occurrences from, and do not share a common question of law or fact

5    with, Plaintiff's claim that defendant Bartley used excessive force on him. In this action, Plaintiff

6    may only pursue relief with respect to actions (or failures to act) that (1) arise out of the same

7    transaction, occurrence, or series of transactions or occurrences, and (2) share a common question

8    of law or fact. Fed. R. Civ. P. 20(a)(2). Plaintiff needs to choose the claims he wants to pursue in

9    this action that meet the joinder requirements, and he should file separate actions for the claims

10   that arise out of separate occurrences.

11          Second, there is no Section 1983 liability simply because an individual supervised the

12   alleged wrongdoer. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (no respondent

13   superior liability, or supervisory liability, under Section 1983, i.e., no liability under theory that

14   one is liable simply because he supervises person who has violated plaintiff's rights). Section

15   1983 liability may be imposed on a defendant only if the plaintiff can show that the defendant

16   proximately caused the deprivation of a federally protected right. *See Leer v. Murphy*, 844 F.2d

17   628, 634 (9th Cir. 1988). To the extent that Plaintiff seeks to sue defendant Smith because

18   defendant Smith's subordinates committed wrongdoing, such a claim would fail to state a

19   cognizable Section 1983 claim.

20          Third, a prison official's denial of an inmate's grievance generally does not constitute

21   significant participation in an alleged constitutional violation sufficient to give rise to personal

22   liability under Section 1983. *See, e.g., Wilson v. Woodford*, No. 1:05–cv–00560–OWW–SMS,

23   2009 WL 839921, at *6 (E.D. Cal. Mar. 30, 2009) (ruling against prisoner on administrative

24   complaint does not cause or contribute to constitutional violation). A prisoner has no

25   constitutional right to an effective grievance or appeal procedure. *See Ramirez v. Galaza*, 334

26   F.3d 850, 860 (9th Cir. 2003) (holding that prisoner has no constitutional right to effective

27   grievance or appeal procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no

28   legitimate claim of entitlement to a grievance procedure."). Defendant Burge's primary

1    involvement in the alleged violations arises from his review of Plaintiff's grievance regarding

2    defendant Bartley's demand that Plaintiff submit to an unclothed body search. Generally

3    speaking, reviewing a grievance does not render the reviewer liable for a constitutional violation

4    related to the grievance. Nor are there any allegations from which it can be reasonably inferred

5    that defendant Burge knew that defendant Bartley would use excessive force on Plaintiff from

6    reviewing a grievance reporting that defendant Bartley had demanded that Plaintiff submit to an

7    unclothed body search.

8        Fourth, there is no right to sue under Section 1983 for a violation of *Miranda* because a

9    violation of its prophylactic rules does not necessarily constitute a Fifth Amendment violation and

10    therefore is not a "deprivation of [a] right . . . secured by the Constitution" within the meaning of

11    42 U.S.C. § 1983. *Vega v. Tekoh*, 597 U.S. 134, 141, 149-50 (2022). And to the extent *Miranda*'s

12    rules could be considered federal "law" under Section 1983, *Miranda* does not include the right to

13    sue for damages. *Id.* at 150-51.

14        Fifth, an allegation that an innate was subject to more restrictive conditions of confinement

15    for nonpunitive reasons generally does not implicate the Due Process Clause. *See Hewitt v.*

16    *Helms*, 459 U.S. 460, 468 (1983) ("the transfer of an inmate to less amenable and more restrictive

17    quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated

18    by a prison sentence."); *Myron v. Terhune*, 476 F.3d 716, 718-19 (9th Cir. 2007) (classification for

19    California Level IV prison rather than Level III prison not shown to be atypical and significant

20    hardship that implicates Due Process Clause); *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1315 (9th

21    Cir.), *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995) ("hardship associated with

22    administrative segregation, such as loss of recreational and rehabilitative programs or confinement

23    to one's cell for a lengthy period of time, does not violate the due process clause because there is

24    no liberty interest in remaining in the general population").

25    **III.  Request for Appointment of Counsel (Dkt. No. 18 at 2-3, Dkt. No. 17 at 22)**

26        Plaintiff has requested that the Court appoint him counsel, arguing that it would be unfair

27    to not appoint counsel here because Plaintiff has suffered a serious head injury and has blurry

28    vision, problems concentrating, night terrors, dizzy spells, and post-traumatic stress syndrome;

United States District Court
Northern District of California

1  has no access to legal materials or copy machine; is housed in administrative segregation which

2  does not have a functioning law library; is housed in an isolated setting; at least one of Plaintiff's

3  legal documents has come up missing due to PBSP staff's haphazard legal mailing system;

4  Plaintiff is at a severe disadvantage; and Plaintiff cannot afford a lawyer. Dkt. No. 17 at 22; Dkt.

5  No. 18 at 2-3.

6      There is no constitutional right to counsel in a civil case unless an indigent litigant may

7  lose his physical liberty if he loses the litigation. *See Lassiter v. Dep't of Social Svcs.*, 452 U.S.

8  18, 25 (1981). A court "may request an attorney to represent any person unable to afford

9  counsel." 28 U.S.C. § 1915(e)(1). Appointing counsel is within the court's discretion and is

10  granted only in exceptional circumstances. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir.

11  1986) (referring to 28 U.S.C. § 1915(d), which was subsequently renumbered to 28 U.S.C. §

12  1915(e)(1)). A finding of "exceptional circumstances" requires an evaluation of the likelihood of

13  the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his

14  claims *pro se* in light of the complexity of the legal issues involved. *See Agyeman v. Corrections

15  Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004). Both of these factors must be viewed

16  together before reaching a decision on a request for counsel under § 1915. *See id*. Plaintiff has

17  ably articulated his claims thus far and the issues in this action are not complex. At this early

18  stage in the litigation, the Court is unable to assess the likelihood of Plaintiff's success on the

19  merits. The Court therefore DENIES Plaintiff's request for appointment of counsel for lack of

20  exceptional circumstances without prejudice to the Court *sua sponte* appointing counsel in the

21  future should the circumstances so require. Dkt. No. 17 at 22; Dkt. No. 18 at 2-3

## CONCLUSION

23      For the reasons set forth above, the Court ORDERS as follows.

24      1.    The Court GRANTS Plaintiff leave to file the first amended complaint docketed at

25  Dkt. No. 17. Dkt. No. 18.

26      2.    The Court DISMISSES the first amended complaint with leave to amend. Within

27  **twenty-eight (28) days** of the date of this order, Plaintiff shall file a second amended complaint

28  correcting the deficiencies identified above, if he can truthfully do so. The second amended

complaint must include the caption and civil case number used in this order, Case No. C 22-06676 HSG (PR) and the words "SECOND AMENDED COMPLAINT" on the first page.  If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed.  An amended complaint completely replaces the prior complaints.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012).  Accordingly, Plaintiff must include in his second amended complaint all the claims he wishes to present and all of the defendants he wishes to sue.  Plaintiff may not incorporate material from the prior complaints by reference.  Failure to file a second amended complaint in accordance with this order in the time provided will result in this action being dismissed for failure to state a claim and/or failure to prosecute and/or failure to comply with a court order.  The Clerk shall include two copies of the court's complaint form with a copy of this order to Plaintiff.

3.    The Court DENIES Plaintiff's requests for appointment of counsel.  Dkt. No. 17 at 22; Dkt. No. 18 at 2-3.

This order terminates Dkt. No. 17 at 22; Dkt. No. 18.

**IT IS SO ORDERED.**

Dated:    3/4/2025

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge